UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA

2021 APR -1  PM 12: 44

Jorge Eliecer Cifuentes-Cuero )
)
       Movant, )
)
v. )   Case No. 8:15-cr-76-T-33AAS
)
United States of America )
)
       Respondent. )
_____ )

**MEMORANDUM IN SUPPORT OF MOTION PURSUANT TO 28 U.S.C.S. §§ 2255**

COMES NOW, Jorge Eliecer Cifuentes-Cuero, (hereinafter "Movant") pro se, and hereby moves this Honorable Court for relief pursuant to 28 U.S.C.S. § 2255 to vacate, set aside or correct sentence. As grounds for such Movant states as follows:

## I. FACTUAL BACKGROUND

In or about 2007, Jorge Eliecer Cifuentes-Cuero ("Movant") was arrested in Ecuador, product of an indictment returned in the municipal Court of Esmeraldas (Ecuador), relating to drug crimes committed in the national territory. Movant accepted the charges and was sentenced to 17 years of imprisonment. In 2012 Movant was placed on supervised release pending the outcome of his appeal which found irregularities in his case. In 2012, Movant was granted a permit to visit an ailing family member in Colombia, while in Colombia he was arrested by Colombian National Police ("CNP"), on behalf of the office of the Drug Enforcement Agency ("DEA") of the United States of America. The DEA had alleged that they have over-whelming evidence from an investigation done by the DEA.

-1-

The embassy of the United States in Colombia, requested formally the extradition of Movant to the United States. After over 18 months of Court appearances the Supreme Court of Colombia denied his extradition to the United States, not finding meritorious grounds that warrant his extradition to the United States of America, while awaiting the finalization of the Court for his re-lease, Movant was escorted out of a Colombian prison by the DEA and CNP officials and placed on a commercial flight to the United States of America.

On MArch 18, 2015, a federal grand jury returned a two-count indictment against Movant, charging him with conspiracy to distrib-ute five kilograms or more of cocaine in violation of 21 U.S.C.S. 963 and 960(b)(1)(B)(ii)(Count-One); and conspiracy to possess with intent to distribute five kilograms or more of cocaine while on-board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C.S. 70503(a)(1), 70506(a) and (b), and 21 U. S.C.S. 960 (b)(1)(B)(ii)(Count-Two). On April 30, 2018, upon advise of his counsel he pled guilty to the second count of the indictment. The only factual allegations to this case was set forth in the plea agreement.

Counsel for Movant filed an Anders brief on the Court of Appeals claiming she saw no frivolous issues in Movant's case for an Appeal. Movant filed an untimely 2255 petition. The Court of Appeals on July 25, 2019, issued an order an instructed defense counsel to file a brief on the jurisdictional facts of Movant's conviction.

-2-

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

COMES NOW, Movant argues, inter alia, that the ineffective
assistance of his appointed counsel violated his Constitutional
Rights under the Sixth Amendment, causing him extreme prejudice
but for counsel's unproffesional errors, the result would have
been different, see Elmore v. Ozmit, 661 F.3d 783 (4th Cir. 2010).
It was counsel's duty to conduct a prompt investigation of the
circumstances of his case and to explore all avenues leading to
facts that were relevant to his case. This investigation should
have included efforts to secure information in possession of the
prosecution and law enforcement authorities, but counsels conduct
fell below an objective standard of reasonableness, Strickland v.
Washington, 466 U.S. 668, 687, 80 L.Ed.2d 674, 104 S.Ct. 2052,
the Sixth Amendment right to counsel exists and is needed in order
to protect the fundamental right to a fair trial. The Constitution
guarantees a fair trial through the due process clause but defines
the basic elements of a fair trial largely through several provi-
sions of the Sixth Amendment including the counsels clause: "[I]n
all criminal prosecutions the accused shall enjoy the right to a
speedy and public trial by a impartial jury of the state and
district wherein the crime shall have been committed which district
shall have been previously ascertained by law and to be informed
of the nature and cause of the accusation; to be confronted with
the witnesses against him; to have compulsory process for obtain-
ing witnesses in his favor, and to have assistance of counsel for
his defense." Because of this vital importance of counsel's
assistance the Supreme Court has held that with certain exceptions
a person accused of a federal or state crime has the right to have

counsel appointed if retained counsel cannot be obtained, see
Argersinger v. Hamlin, 407 U.S. 25, 32 L.Ed.2d 530, 92 S.Ct. 2006
(1972) ... that a person who happens to be a lawyer is present at
trial alongside the accused. However, it did not enough to satisfy
the constitutional command that the Sixth Amendment recognizes.
Movant's constitutional rights to the assistance of counsel, invis-
ions counsel playing a role that is critical to the ability of the
adversarial system to produce just results. Movant was entitled to
be assisted by counsel... who plays the role necessary to ensure
that the trial is fair.

Movant was deprived of effective assistance, his counsel simply
failing to render "adequate legal assistance," see Cuyler v. Sullivan,
466 U.S. 344, 64 L.Ed.2d 333, 100 S.Ct. 1708. Id. at 345-350, from
counsels function as assistant to Movant derive the overarching
duty to have advocated Movant's cause and the more particular
duties to consult with Movant on important decisions and to keep
Movant informed of important developments in the course of the pro-
secution, she also had a duty to bring and bear such skill and
knowledge as to have rendered the trial a reliable adversarial
testing process, see Powell v. Alabama, 287 U.S., at 68-69, 77
L.Ed. 158, 53 S.Ct. 55, 54 ALR 527., counsels assistance to Movant
in this case fell below prevailing norms of practice. Resulting in
extreme prejudice, counsel conduct so undermined the proper func-
tioning of the adversarial process that the trial could not be
relied on as having produced a just result. Counsel's performance
was deficient bias and discriminate, she was not functioning as
the counsel guaranteed to Movant by the Sixth Amendment, her
deficient performance prejudiced the defense, which counsel's

errors were so serious as to deprive Movant of a fair trial. Counsel's representation fell below an objective standard for reasonableness under prevailing professional norms of ethics. Thus, for relief Movant argues the following.

ARGUMENT

MOVANT'S ABDUCTION FROM COLOMBIA BREACHED THE CONVENTION
ON THE LAWS OF TREATIES

1. Movant argues, inter alia, that his abduction from Colombia after the Supreme Court decided that the evidence presented by the government of the United States did not warrant his extradition on the facts before it. Movant was forcibly abducted from Colombia, whose territorial sovereignty this country has agreed in two international treaties to respect. The charter of the United Nations the members of which include the United States and Colombia, see Dept. of State, Treaties in Force 402-03 (1973), obligates "[A]ll members" to "refrain ... from the threat or use of force against the territorial integrity political independence of any state ...," see U.N. charter, Art. 2 ¶4, Additionally the Charter Organization of American States, whose members also include the United States and Colombia, see Dept. of State, treaties in force 359 (1973), provides that the "territory of a State is inviolable; it may not be the object even temporarily...of...measures of force taken by another State directly or indirectly on any grounds whatever...," see O.A.S. Charter, Art. 17.

This Court must divest of jurisdiction over Movant's person, where it has been acquired as the result of the governments deliberate, unnecessary and unreasonable invasion of Movant's constitutional rights. This represents but an extension of the well-

recognized power of federal Courts in the civil context to decline
to exercise jurisdiction over Movant whole presence has been
secured by force and fraud, see Re Johnson, 167 U.S. 120, 126,
42 L.Ed. 103, 17 S.Ct. 735 (1896); Fitzgerald Construction Co.
v. Fitzgerard, 137 U.S. 98, 34 L.Ed. 608, 11 S.Ct. 36 (1890),
when the Supreme Court denied Movant's extradition to the United
States the corruption and bribery of Colombian government officials
by the United States violated the foreign corrupt practices act
(FCPA), 15 U.S.C.S. 78dd-2(a)-(A)(1)(ii). The deliberate mis-
conduct on the part of United States agents in violation not only
of constitutional prohibitions but also of the federal kidnapping
act and two international treaties obligating the United States
government to respect the territorial sovereignty of Colombia is
charged, see U.N. Charter, Art.2., O.A.S. Charter, Art.17.5 31 U.
S.T. 5059, Art. 111, provides in part that:

> Extradition shall be granted only if the evidence be found sufficient
> according to the laws of the requested party ... either to justify the
> commital for trial of the person sought if the offense of which he has
> been accused had been commited in that place.

See also Covention on Extradition with protocol October 24,
1961, U.S. Swed., Art.111, 14 U.S.T. 18 45, 3190. Not only were
several laws broken and crimes committed at the behest of government
agents but the conduct was apparently unnecessary as the extra-
dition treaty between the United States and Colombia, see 35 Stat.
2028, does not specifically exclude narcotics violation so when a
representative of the United States government failed to present
evidence and conclude with Colombia a special arrangement for
Movant's extradition, Cf. Fiocconi v. Attorney General of the
United States, 339 F.Supp.1242, 1244 (S.D.N.Y. 1972).

-6-

Movant's  trial in the United States was the outgrowth of the
fruits of the governments illegality that debase the process, see
McNabb v. United States, 318 U.S. 332, 87 L.Ed. 819, 63 S.Ct. 608
(1943); Rea v. United States, 350 U.S. 214, 100 L.Ed. 233, 76 S.Ct.
292 (1955). Here the district court criminal process was abused
and degraded by the government's actions, where it was executed
against Movant who has been brought into the territory of the U.S.
by the methods alleged here, Cf. Commercial Mutual Accident Com-
pany v. Davis, 213 U.S. 245, 53 L.Ed. 782, 29 S.Ct. 445 (1909);
such abuses could not be tolerated without debasing "The Process
of Justice."

    2. Movant argues that as a matter of international comity the
"doctrine of specialty" prohibits the requesting nation from pro-
secuting and extradited individual for any offense other than that
for which the surrendering State agreed to extradite, see United
States v. Kahn, 993 F.2d 1368 (9th Cir. 1993). A legal extradition
procedure in Colombia would require the representative of the United
States to formally present the indictment in Colombia (with a
certified translation in Spanish) by which if the Court finds
merit to the United States case would surrender the defendant
under an act of guarantee. This would have guaranteed that the
petitioning state live up to whatever promises it made in order to
obtain extradition, Art.2 of Law 906 (Colombian Constitution). The
"doctrine of specialty," will rather than mandating exact uniformity
between the charges set forth in the extradition request and the
actual indictment, the "doctrine of specialty," would then require
that the prosecution be based on the same "[F]acts as those set
forth  in the request for extradition, see United States v. Marquez,

-7-

684 Fed. Appx. 843 (11th Cir. 2017); <u>Terlinden v. Ames</u>, 184 U.S. 270 (289, 54 S.Ct. 191, 193) 78 L.Ed. 315 (1933). Thus, a nation that receives a criminal defendant pursuant to such extradition treaty, may only try the defendant only for those offenses for which the other nation granted such extradition, see <u>United States v. Herbage</u>, 850 F.2d 1463 (11th Cir. 1988). The construction of treaties is judicial in its nature, and a district court when called upon to act should be careful to see that international engagements are faithfully kept and observed and that the execu-tives live up to U.S. International obligations, see <u>United States v. Toscanino</u>, 500 F.2d 267 (2nd Cir. 1974). As the Supreme Court, in what one distinguished luminary describes as a "consitutional revolution," see <u>Griswold</u> the due process revolution and confron-tation, 119 U. Pa.L.Rev. 711 (1971), has expanded the interpretation of "due process." No longer is it limited to the guarantee of "fair" procedure at trial. In an effort to deter police misconduct, the term has been extended to bar the government from realizing directly the fruits of its own deliberate and unnecessary lawless-ness in bringing the accused to trial, see <u>United States v. Rusell</u>, 411 U.S. 423, 430-31, 36 L.Ed.2d 366, 93 S.Ct. 1637 (1973); <u>Mapp v. Ohio</u>, 367 U.S. 643, 81 S.Ct. 1684, 6  L.Ed.2d 1081 (1961); <u>Silverman v. United States</u>, 365 U.S. 505, 5 L.Ed.2d 734, 81 S.Ct. 679 (1961). See also, e.g., <u>Pitler</u>, "The fruit of the poisonous tree," revised and shepardized, 56 Calif. L.Rev. 579, 600 (1968); Scott, criminal jurisdiction of a state over a defendant based on presence secured by force or fraud, 37 Minn. L. Rev. 91, 102, 107 (1953); Allen, due process and state criminal procedures: another look, 48 N.W.U.L. Rev. 16, 27-28 (1953); Supreme Court 1951 term,

66 Harv.L.Rev. 89, 126-27 (1953); see also <u>United States v.</u>
<u>Edmonds</u>, 432 F.2d 577, 583 (2nd Cir. 1970); <u>Government of Virgin</u>
<u>Islands v. Ortiz</u>, 427 F.2d 1043, 1045 n.2 (3rd Cir. 1970).

    3. Movant argues that, his alleged abduction breached the
convention and the laws of nations, see International Court of
Justice, Art.38(1), 59 Stat. 1055; see also Vienna Convention on
the Laws of Treaties U.N. Doc. A/Conf. 39/27, Part 1, Art.2 1(a)
(1969), reprinted in 63 am. j. International, 875 (1969). Movants
conviction cannot be brought about by methods that offend a sense
of justice, see <u>Rochin v. California</u>, 96 L.Ed. 183, 342 U.S. 165
(1952), "to declare that the government may commit crimes to in
order to secure the conviction of movant...would bring terrible
retribution against that pernicious doctrine this Court should
resolutely set its face," quoting 277 U.S. 485-85, see also
(<u>United States v. Archer</u>, 486 F.2d 670, 674-75 (2nd Cir. 1973).
"[I]n regard for the requirements of the due process clause in-
escapably imposes upon this Court an exercise of judgement upon
the whole course of the proceedings [resulting in conviction] in
order to ascertain whether they offend those cannons of decency
and fairness which express the notions of justice of English-
speaking people even toward those charged with the most heinous
offenses...

    "And applying these general considerations to the circum-
stances of the present case, we are compelled to conclude that
the proceedings by which this conviction was obtained do more than
offend some fastidious squeamishness of private sentimentalism
about combatting crime too categorically. This conduct that shocks
the conscience...."

-9-

4. Movant argues that, article: 32(A) of the Vienna Convention against illicit traffic in narcotic drug and psychotropic substances. December 19, 1988, 1582 U.N.T.S. 95 ("U.N. Narcotic Convention") states that: "... the person or persons must be prosecuted in the territory where the act or acts were committed..." and to prosecute him for alleged conspirational acts abroad violated due process and was arbitrary and fundamentally unfair, 327 F.3d 56, and 18 U.S.C.S. 137, the general conspiracy statue precludes prosecution for drug-related conspiracy without a nexus to the United States. Movant's conviction should be vacated. His arbitrary arrest, detention and prosecution was in violation of the Laws of Nations, and a treaty of the UNited States.

### 21 U.S.C.S. 960, 963 DOES NOT APPLY EXTRATERRITORIALLY

5. Movant argues that, the charging offense statue of 21 U.S.C.S. 960 and 963 are misplaced by prosecutorial misconduct because neither statue applies extraterritorially. The United States Court of Appeals for the Ninth Circuit held that: "in order to apply extraterritorially a federal statue to a defendant constinently with due process, there must be a 'sufficient nexus' between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair," United States v. Yousef, 327 F.3d 56 (2nd Cir. 2002); United States v. Umeh, 762 F. Supp.2d 658 (2nd Cir. 2010). Meanwhile for non-citizen acting entirely abroad, a jurisdictional 'nexus' [e]xist when the aim of that activity is to cause harm inside the United States or to its citizens or interest, United States v. Al Kassar, 660 F.3d 108, 118 (2nd Cir. 2011); Cf. United States v. Ali, 718 F.3d 929, 946, 405 U.S. App. D.C. 279 (D.C. Cir. 2013). Under International Law,

-10-

a state does not have jurisdiction to prescribe the conduct in question... to have jurisdiction over.... distribution of a controlled substance by a Non-U.S. Citizen of a foreign vessel on the high seas, the United States must show an actual or potential adverse effect within its territory. It is doubtful that such an adverse effect could be demonstrated in the absence of intent to import the substance into the United States or knowledge that it will be imported. Citing: Letter from Patricia M. Wald, Assistant Attorney General (April 11, 1979) reprinted in H.R. Rep. No. 323, 96th Cong. 1st Sess. 16 (1979). This reasoning is significant here, because the acts of conspiracy alleged occured in the Southern Hemisphere in the Archipelagis Waters of Colombia in the Pacific Ocean hundreds of miles from the special maritime jurisdiction of the United States. Not governed even in U.N.C.L.O.S. Pt. 111, Art. 101, 1833 U.N.T.S. 432. Courts will not bind themselves to potential violations on International Law, where legistative intent is ambigous, United States v. Yunis, 288 U.S. App. D.C. 129, 924 F.2d 1086 (1991 App. Dc) Courts should hesitate to give penal statues extraterritorial  effect absent a clear congressional directive. Congress enacted 963 [21 U.S.C.S. 963] as part of the comprehensive drug abuse prevention and control act of 1970. Using its "commerce clause power," not its "offense clause power," (21 U.S.C.S. 801) the act have been upheld as a valid exercise of congress' commerce power, United States v. Rojas, 812 F.3d 382 (5th Cir. 2016).

    6. Movant argues that, he was not aboard any vessel he never entered the United States, or had any nexus to the United States. Under 21 U.S.C.S. 963 the government was required to prove:

(1) that "an agreement existed between two or more persons..."
(2) "that he had knowledge of the conspiracy and voluntary joined
it..." (3) that he and his co-conspirators participated voluntarily
in the alleged (4) Movant is the only person named in the indictment.
The government was required to show that defendant intended or knew
that the conspiracy to import was directed at the United States.
Id. at, 812 F.3d 382 because 963 targets import into the United
States as defined by 21 U.S.C.S. 951 et. seq.(a)(1) bringing in or
introducing of such article into any custom area of the United
States. Regarding the presumption against extraterritorial applica-
tion, that canon provides that when a statue gives no clear indi-
cation of an extraterritorial application it has none, and reflects
the presumption that; "U.S. Laws governs domestically, but does not
rule the world." Kiobel v. Royal Dutch Petro. Co., 569 U.S. 108__,
S.Ct. (2012) (Roberts, Ch. J., joined by Scalia, Kennedy Thomas,
an Alito J.J.) this presumption against extraterritorial applica-
tion helps ensure that the judiciary does not erroneously adopt
an interpretation of U.S. Laws that carries foreign policy conse-
quences not clearly intended by the political branches. Id. 185 L.
Ed.2d 673. As used in the common law, the "elements" of an offense
include each part of the "Actus Reus," causation, and the "Mens
Rea," that the government must establish before an individual can
be found guilty of a crime, see: Black's Law Dictionary 560 (6th
Ed. 1990)(defining: "elements of crime," in part as: "[A] term
used by the common law refers to each component of the "Actus Rea,"
causation, and the "Mens Rea." That must be proved in order to
establish that a given offense has occured.")

7. Movant argues that, the Court was required to raise "Sua Sponte" the issue of whether the indictment properly charges an offense since that represents a jurisdictional issue, see: United States v. Peters, 310 F.3d 709, 713 (11th Cir. 2002)(per curiam); United States v. Meacham, 626 F.2d 503, 509 (5th Cir. 1980). It is axiomatic that the elements alleged must amount to an offense. (Which in this case it does not) the question is whether the indictment sufficiently apprises Movant of the charges against him, and whether the indictment states an offense, are both conceptually and procedurally distinct. To prosecute Movant for conspiracy succesfully. The government must be able to point to two(2) separate provisions; (1) "making the act of conspiring a crime," and (2) "making the object of the conspiracy a crime." See, United States v. Clay, 495 F.2d 700 (7th Cir.) Cert. denied, 419 U.S. 937 95 S.Ct. 207, 42 L.Ed.2d 164 (1974), Powe v. United States, 109 F.2d 147 (5th Cir.) cert. denied. 309 U.S. 679, 60 S.Ct. 717,84 L.Ed. 1023 (1940). Without question 963 makes certain attempts and conspiracies criminal. Drug-abuse law contain their conspiracy statue 18 U.S.C.S. 371 may ["not"] be used to prosecute conspiracies to violate the drug control laws. "This title" as used in section 963 refers to the section in the drug abuse chapter on imports and exports the statue is a part of chapter 13 of title 21 of the U.S. Code, and judged on its face, the charge is one which the state may not use to constitutionally prosecute Movant. For conspiracy to possess and distribute narcotics in the territorial sovereign of a foreign state, without intent, knowledge or conspiracy to import into the U.S. ("congress possesses some discretion in establishing the boundaries of offenses that are unclear, but congress may not create offenses

-13-

where none exist") Id. 21 Vand. J. Transnational L. 865, 873-74
(1988).

PROSECUTORIAL MISCONDUCT

8. Movant argues that, his presence in the United States is
based upon presence secured by fraud, deciet and trickery. Pursuant
to 18 U.S.C.S. 1001(a)(2), states: "...who ever in any matter within
the executive, legislative, or judicial branch of the government of
the United States, falsifies, conceals, or cover up any trick,
scheme...a material fact"...makes uses any false writings, or
documents knowing the same to contain any materially false, fictici-
ous, or fraudelent statement of entry"...(definition in 18 U.S.C.S.
202) violates a defendant constitutional right to due process of
law. The statement of facts alleged in the plea agreement[1] that:
"...the defendant was detained and first arrived in the United
States at a point in the Middle District of Florida.." (plea agree-
ment, Doc. 41-Id.23). The statement in the indictment that: "from
an unknown date, continuing thereafter up to and including the date
of this indictment, in the Middle District of Florida and elsewhere,
the defendant..." (Indictment Doc.1, Id.1). These are false and
misleading assertions of materially false, ficticious and fraudulent
statements made by the prosecution.

9. Movant argues that, during the alleged search of drug boats
in El Salvador (on or about January 4, 2013) and Colombia (on or
about July 20, 2014)[2] During which Movant was serving a seventeen

---

1) The statements of facts were alleged in the plea colloquey, not an affidavit.
2) The alleged maritime interdiction contained in the plea colloquey occured
seventeen months apart.

year sentence in Ecuador, from 2007 to 2024. Movant was only released
on probation in 2015 pending his appeal. He was in Colombia visiting
family members when he was detained on behalf of the United States.
Neither the government or Movant's ineffective counsel had informed
the Court that, when going through the legal proceeding in the
Colombia Supreme Court he was denied extradition into the United
States, and Movant's presence before the Court was secured by illegal
and unlawful means (22 U.S.C.S. 2291). Due process has long been
extended to bar the government from realizing directly the fruits
of its own deliberate and unnecessary lawlessness in bringing the
accused before a Court, an illegal arrest constitutes a seizure of
the person in violatio of the U.S. Constitution Amendment IV. A
district court may not themselves become "accomplices in willful
desobedience of law. The charter of the U.N., the members of which
include the United States and Colombia, see: <u>Dept. of States Treaties
in Force 402-03 (1973)</u>. Obligates all members to: "refrain...from
the  threat or use of force against the territorial integrity or
political independence of any state..." It also provides that the
territory of a state is "inviolable."  It may not be the object,
even temporarily...of...measures of force taken by another state,
directly or indirectly, on any grounds what-so-ever..." See:
Organization of American States (OAS) charter: Art. 17. Colombia
has an extradition treaty with the United States, and all extra-
ditions proceedings are governed by: The Prosecutor General Office
of Colombia (FISCALIA). The ministry of rights and justice, and the
final decision of the SUpreme  Court of Justice, so by using a plea
agreement to cover up unconstitutionally and violations of inter-
national norms of decency. The use of a confession obtained by

-15-

coercion, threats, or promises, or one produced by fraud, deceit, and treachery by those representing the state, as a means of obtaining a verdict of guilty, denies due process, 86 L.Ed. 166, 314 U.S. 219, Lisbena v. california, Id. at 13 (<pg. 168>). The Supreme Court has long emphasized the "special role played by the American prosecutor in the search for the truth in criminal trials," quoting, Hayes v. Brown, 399 F.3d 927 (9th Cir. 2004); Strickler v. Greene, 527 U.S. 263, 281, 144 L.Ed.2d 286, 119 S.Ct. 1936 (1999), one of the Bedrock Principles of the United States Democracy. "Implicit in any concept of ordered liberty," is that the state may not use false evidence to obtain a criminal conviction. Napue, 360 U.S. 264, Id. Deception of Judge and jury is inconsistent with rudimentary demands of justice," Mooney v. Holohan, 294 U.S. 103, 112, 79 L.Ed. 791, 55 S.Ct. 340 (1935).

10. Movant argues that, it is more than evidenced that the Court, was deceived by the unconscionable actions and misleading allegations. Which is evident here: the Court "...Mr. Cifuentes, by pleading guilty you are not only admitting the criminal charges in Count-Two, but you are also giving up a number of constitutional rights that you have because; you were arrested here in the United States." (Doc. 64, pg.20 Id. 5-8). Testimony of government counsel; "....the defendant was detained and first arrived in the United States at a point in the Middle District of Florida. (Doc. 64, pg. 27 Id. 6-8).

11. Movant argues that, his illegal presence in the United States are the product of falsification of the government, unconscionable action and these decisions are not arbitrary exceptions

to the comprehensive right of the state to fashion evidence against him and create their own rules of evidence for a criminal accusation, they are not sports in the U.S. Constitutional Law, but applications of a general principle. They are only instances of the general requirement that states in their prosecutions respect certain decencies of conduct, you see, due process of law, has a historic and generative principle, precludes defining and thereby confining, these standards of conduct more precisely than to say that, Movant's conviction cannot be brought about by methods that offend a sense of justice, Rochin, "to declare that the government may commit crimes in order to secure the conviction of petitioner... would bring terrible retribution against that pernicious doctrine this Court should resolutely sets its face." Quoting: 277 U.S. 485 Archer, society is the ultimate loser when in order to convict it uses methods that lead to decreased respect for the law. Movant's conviction is a violation of the law of nations and a treaty of the United States and International Norms of Decency, and should be vacated.

12. In this case, the District Court did not expressly make any factual findings with respect to its jurisdiction. The government contends, however on appeal that Movant's plea agreement, which was consistent with his factual proffer and presentence investigation report, establishes tha district court's jurisdiction in the plea agreement Movant agreed to plead guilty to conspiring to possess with intent to distribute cocaine "with individuals who were on board a vessel that was subject to the jurisdiction of the United States." That statement the government appears to argue constitutes an admission of jurisdiction. The government's argument fails because

as it have repeatedly held "[p]arties may not stipulate jurisdiction" see W. Peninsular Title Co. v. Palm Beach city, 41 F.3d 1490, 1492 n. 4 (11th Cir. 1995); see also Travaglio v. Am. express Co., 735 F.3d 1266, 1269-70 (11th Cir. 2013) ("[I]t is fundamental that parties may not stipulate to federal jurisdiction."); Bush v. United States, 703 F.2d 491, 494 (11th Cir. 1983)(even, "the mere fact that the parties stipulated to jurisdiction does not automatically vest authority in the district court to adjudicate all the issues presented for subject matter jurisdiction cannot be assumed by the court nor can it be waived by the parties.") The government points out that Movants alleged co-conspirators, in two separate proceedings against him, admitted to facts that would establish jurisdiction in their case, moreover the secretary of state has confirmed that Ecuador had consented to the enforcement of United States Law on said vessels. For example that co-conspirators admitted in their plea that the vessel was an Ecuatorian registered vessel but the government contended that Ecuador consented to application of U.S. Law on those vessels, his admission would still be irrelevant here because the question is whether the record in Movant's case, not some other case, establishes jurisdiction, it does not., See Cf. United States v. Iguaran, 821 F.3d 1335 (11th Cir. 2016).

13. A federal Court could not try an accused for offenses against the laws of a foreign Country. The application of U.S. Laws to is unreasonable to satisfy the requirement under international law. The complaint was to allege that Movant's actions were directed at, or against the security of the United States, its interest or intended to disrupt its governmental functions. The

-18-

Court here has prosecuted Movant for alleged actions that were not taken against the United States itself. Thus, the concepts of International Law, that a nation has the right to protect itself from crimes against it. Is surely not supported by jurisdiction here. Moreover, the must include element that drug conspiracy was to commit crime in the United States, see United States v. Benbow, 539 F.3d 1327 (11th Cir. 2008) because discussing drug crimes to occur abroad does not violate U.S. Law, see United States v. Lopez-Vanegas, 493 F.3d 1305 (11th Cir. 2007). Because the object of the conspiracy...the possession and distribution of cocaine on foreign soil...there is no violation of U.S. Law, 18 U.S.C.S. 371 was enacted to adopt common law definition of conspiracy, thereby proscribing agreement to commit unlawful acts against the United States, rather than unlawful objects themselves. See United States v. Rodriguez, (1980 CA. 5 Fla.) 612 F.2d 906, Reh. Denied (1980 CA 5 Fla.) 617 F.2d 1214 and Affd. (1981) 450 U.S. 333, 67 L.Ed.2d 275, 101 S.Ct. 1137.

## CONCLUSION

Movant argues that, former counsel instead of adhering to the ethical obligations of the adversarial process, proceeded in bad faith resulting in prejudice that affected Movant's substantial rights, he was denied effective assistance of counsel, and was extremely prejudiced by defense counsel, because if not for counsel's unprofessional conduct and errors the results of the proceedings would have been different. It was counsel's duty to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case. Counsel's investigation should have included efforts to secure information in the possession of the prosecution and law enforcement authorities, this duty existed regardless of any admissions or statement to counsel of facts constituting guilt. (Strickland prejudice prong) counsel violated the ethical obligation clause of the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 687-88 (1984).

Movant respectfully request this Court to vacate, set aside, or correct his sentence.

Respectfully Submitted,

Jorge Eliecer Cifuentes-Cuero

-20-

<u>CERTIFICATE OF SERVICE</u>

I, Jorge Eliecer Cifuentes-Cuero, pro se, hereby certify that a true and correct copy of the foregoing Brief has been furnished by postage pre-paid U.S. Mail on the 27 day of March, 2021 to the following party:

Clerk of the Court
United States District Court
Middle District of Florida
801 North Florida Avenue
tampa, Fl. 33602

By: _____
      Jorge Eliecer Cifuentes-Cuero

-21-