```
               UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
                      TAMPA DIVISION
```

JORGE ELIECER CIFUENTES-CUERO,

v.                                 Case No. 8:15-cr-76-VMC-AAS
                                           8:21-cv-787-VMC-AAS

UNITED STATES OF AMERICA.

_____/

**ORDER**

This cause is before the Court on Jorge Eliecer Cifuentes-Cuero's pro se 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence. (Civ. Doc. # 1; Crim. Doc. # 79). The government filed a response in opposition and Cifuentes-Cuero filed a reply. (Civ. Doc. ## 4, 7). For the reasons explained below, the Motion is denied.

**I.   Background**

In August 2018, this Court sentenced Cifuentes-Cuero to 262 months' imprisonment after he pled guilty to one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States. (Crim. Doc. # 56).

In his plea agreement, Cifuentes-Cuero admitted the following facts: Cifuentes-Cuero has been involved in narcotic trafficking since 2001 and eventually gained a

1

leadership role in the organization, "[growing] and expand[ing] his narcotic trafficking operations from Columbia into Ecuador." (Crim. Doc. # 41 at 19). From 2011 to 2015, he was a "principle member of his Colombian and Ecuadorean-based drug trafficking operation." (Id. at 20). Cifuentes-Cuero participated in multiple maritime drug-trafficking ventures by organizing the logistics of the ventures, holding meetings with others, and supplying information about vessel routes, rendezvous points, and final destinations. (Id.). He also funded the supplies necessary to conduct the ventures, including purchasing vessels, fuel, engines, and electronic equipment. (Id. at 21). He also provided financial support to, and supplies for, the crewmembers of the vessels. (Id.). Cifuentes-Cuero would, either personally or at his direction, hire and pay the crew members who transported the narcotics. (Id.). As described in the plea agreement, Cifuentes-Cuero was an organizer for two smuggling ventures that were intercepted by law enforcement in 2013 and 2014. (Id. at 21-22).

Following his conviction in the instant case, Cifuentes-Cuero filed an appeal, and the Eleventh Circuit affirmed his conviction in April 2020. (Crim. Doc. # 77). In that unsuccessful appeal, Cifuentes-Cuero argued that the factual

basis for his guilty plea was insufficient and that the Maritime Drug Law Enforcement Act ("MDLEA") exceeds Congress' authority under the Foreign Commerce Clause, as applied to him. (Id. at 2).

Thereafter, Cifuentes-Cuero filed the instant Section 2255 Motion. (Civ. Doc. # 1). In the form Motion, Cifuentes-Cuero lists all three of his grounds as "ineffective assistance of counsel." (Id. at 4-9). In the memorandum accompanying his Motion, Cifuentes-Cuero spends two pages laying out the black-letter law on the standard for an ineffective-assistance claim. (Doc. # 1-1 at 3-5). Cifuentes-Cuero then raises three arguments. First, he claims that his "abduction" from Colombia and subsequent extradition to the United States breached certain international treaties. (Id. at 5-10). Second, he argues that 21 U.S.C. §§ 960 and 963 do not apply outside of the United States. (Id. at 10-14). Finally, he alleges prosecutorial misconduct in that the government effected his "illegal arrest" and utilized "falsification . . . [and] unconscionable actions[s]" to secure his presence in the United States. (Id. at 14-19).

The Motion has been fully briefed (Civ. Doc. ## 1, 4, 7) and is ripe for review.

**II. Discussion**

Here, the government argues that Cifuentes-Cuero is not truly raising ineffective-assistance-of-counsel claims because he does not describe any particular action or inaction of his attorney that affected his case and, thus, his ineffective-assistance claims are "a mere shibboleth to avoid the [procedural] bars to his claims." (Civ. Doc. # 4 at 7).

The Court agrees. While this Court construes the Section 2255 Motion liberally because Cifuentes-Cuero is proceeding pro se, "this leniency does not permit the district court to act as counsel for a party or to rewrite deficient pleadings[.]" Lampkin-Asam v. Volusia Cnty. Sch. Bd., 261 F. App'x 274, 276-77 (11th Cir. 2008).

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish deficient performance, Cifuentes-Cuero must demonstrate by a preponderance of the evidence "that **particular and identified acts or omissions of counsel** 'were outside the wide range of professionally competent assistance.'" Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000)(citations omitted)(emphasis

added). In other words, Cifuentes-Cuero must show that "no competent counsel would have taken the action that [his] counsel did take." Id. at 1315.

Cifuentes-Cuero bears the burden of proving that he is entitled to relief under Section 2255. See Rivers v. United States, 777 F.3d 1306, 1316 (11th Cir. 2015) ("[W]e note that Rivers bears the burden to prove the claims in his § 2255 motion."); see also Beeman v. United States, 871 F.3d 1215, 1221-25 (11th Cir. 2017) (explaining that placing this burden on Section 2255 movants "makes sense" given AEDPA's policy of ensuring the finality of convictions).

Here, Cifuentes-Cuero does not point to a single action, inaction, or decision taken by his trial counsel or appellate counsel at all, much less "particular and identified acts or omissions of counsel [that] were outside the wide range of professionally competent assistance." See Chandler, 218 F.3d at 1314 (internal quotation marks omitted); see also Brownlee v. Haley, 306 F.3d 1043, 1059 (11th Cir. 2002) ("A petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they were outside the wide range of professionally competent assistance."). Nor does he even attempt to state how such

5

unspecified actions or inactions prejudiced him. Under these circumstances, and given that Cifuentes-Cuero bears the burden of proof and persuasion, the Court's liberality in construing pro se motions cannot extend to addressing an ineffective-assistance-of-counsel claim without knowing which acts or omissions to address.

The Court will therefore address each claim as it was actually raised. Furthermore, as an alternative holding, the Court will address why, even if it were to strain the bounds of liberal construction by viewing the claims as raised under an ineffective-assistance-of-counsel rubric, the claims would nevertheless fail.

### A. Cifuentes-Cuero's extradition arguments

The Court will first address Cifuentes-Cuero's argument that he was "abducted" from Colombia, that the government used underhanded tactics to ensure his appearance in the United States, that his extradition was improper and, thus, the district court lacked jurisdiction over him. (Doc. # 1-1 at 5-10, 14-19).

A claim that a sentence was imposed in violation of a petitioner's constitutional rights or without jurisdiction is cognizable in a Section 2255 motion. See 28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a court established

6

by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence[] . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.").

However, claims that were previously available to a movant but were not raised in a prior proceeding are defaulted and are ordinarily barred from consideration on collateral review. Bousley v. United States, 523 U.S. 614, 622-24 (1998). Under the procedural default rule, "a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a [Section] 2255 proceeding." McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011). There are two exceptions to the rule of procedural default: "(1) for cause and prejudice, or (2) for a miscarriage of justice, or actual innocence." Id.

The cause-and-prejudice standard requires Cifuentes-Cuero to show both cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error. Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004). If Cifuentes-Cuero cannot show both cause for his procedural

default and prejudice, this Court should not consider his challenge to his sentence unless he demonstrates "actual innocence." Bousley, 523 U.S. at 620-24.

Construing the Motion, then, as raising challenges to Cifuentes-Cuero's extradition, the Court agrees with the government that this claim is procedurally barred. Cifuentes-Cuero did not argue before the trial court or on direct appeal that his extradition was improper and / or that his "abduction" from Colombia rendered the district court without jurisdiction, despite the claim being available. Therefore, absent one of the exceptions above, his claim is procedurally barred.

Cifuentes-Cuero has not pointed to any reason supporting why this claim was not raised previously, beyond some vague references to his counsel's alleged ineffective assistance. In some circumstances, a petitioner can establish cause based on ineffective assistance of counsel, see Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002), but to do so, the petitioner must fully allege and prove deficient performance that worked to his actual and substantial disadvantage. Reece v. United States, 119 F.3d 1462, 1465-68 (11th Cir. 1997). But, again, without any allegations about what counsel did or did not do, why such actions or omissions

8

were deficient, or how such omissions prejudiced him, Cifuentes-Cuero has not established cause for failing to raise this claim earlier or prejudice therefrom. In addition, Cifuentes-Cuero has not presented persuasive evidence of his actual innocence, and thus he cannot show a fundamental miscarriage of justice. See Fortenberry, 297 F.3d at 1222 (dismissing fundamental miscarriage of justice claim in absence of persuasive evidence of innocence). Thus, his extradition claim is procedurally barred.

Delving further, and considering whether Cifuentes-Cuero's counsel was ineffective for failing to raise a jurisdictional challenge based on his alleged "abduction" and improper extradition from Colombia, the claim still fails.

"The general rule, as enunciated by the Supreme Court in Ker v Illinois (1886) 119 US 436 [], and followed by the Supreme Court in Frisbie v Collins (1952) 342 US 519 [], is that the power of a court to try a person for a crime is not impaired by the manner in which he has been brought within the court's jurisdiction, whether by forcible abduction, violation of international treaty, or illegal arrest." 64 A.L.R. Fed. 292; see also United States v. Arbane, 446 F.3d 1223, 1225 (11th Cir. 2006)("The Supreme Court's Ker–Frisbie doctrine holds that a criminal defendant cannot defeat

personal jurisdiction by asserting the illegality of the procurement of his presence in the relevant jurisdiction—here, the United States.").

In 1992, the Supreme Court held that where the subject extradition treaty did not prohibit abductions outside of its terms, and general principles of international law provided no basis for interpreting the treaty to include an implied term prohibiting international abductions, a district court properly had jurisdiction to try a Mexican national who had been forcibly kidnapped and brought to the United States to stand trial. United States v. Alvarez-Machain, 504 U.S. 655, 669-70 (1992). As the Court explained, while a defendant may not be prosecuted in violation of the terms of an extradition treaty, if the extradition treaty does not prohibit a respondent's forcible abduction, the Ker-Frisbie doctrine applies, and jurisdiction will be proper. Id. at 668-70 (citations omitted). Thus, the Ker-Frisbie doctrine has one exception – for when "an extradition treaty contains an explicit provision making the treaty the exclusive means by which a defendant's presence may be secured." Arbane, 446 F.3d at 1225 (citing Alvarez-Machain, 504 U.S. at 664).

For example, the Eleventh Circuit has relied on this line of caselaw in holding that an individual's abduction

10

from the Dominican Republic did not bar an American court's jurisdiction over him where the subject treaty did not expressly bar such abductions. See United States v. Castillo, 568 F. App'x 774, 783 (11th Cir. 2014).

Here, the Court will take at face value Cifuentes-Cuero's allegation that he was abducted from Colombia by American authorities in order to stand trial in this country. Under Alvarez-Machain, then, the only question is whether the subject extradition treaty contains an explicit provision outlawing such abductions.

The state of the law with respect to extradition between the United States and Colombia is far from clear. The Eleventh Circuit has provided this nutshell history of the relationship:

> The United States and Colombia entered into an extradition treaty on September 14, 1979. Colombia ratified the treaty by its Law 27 of 1980, and the United States ratified the treaty on November 20, 1981. In 1986, the Colombian Supreme Court held that Law 27 was unconstitutional because it had been sanctioned by a Colombian government official other than the President of Colombia. Because of this ruling, the treaty remains inapplicable in Colombia. However, in 1989, the President of Colombia, pursuant to his martial law powers, issued Decree Number 1860 which provides in pertinent part that "for the purpose of extradition of Colombian and foreign nationals sought for [narcotics trafficking and related] offenses, the procedure set forth in the Code of Criminal Procedure shall be applied, with the modifications

11

>set forth herein." The issuance of this decree suspended Colombia's requirement that Colombian nationals be extradited only pursuant to public treaties.

United States v. Gallo-Chamorro, 48 F.3d 502, 503 n.1 (11th Cir. 1995) (citations omitted); see also United States v. Valencia-Trujillo, 573 F.3d 1171, 1179 (11th Cir. 2009) ("The fact is that the 1979 treaty was not in effect at the time the defendant in Gallo-Chamorro was extradited in 1990. The law ratifying the treaty had been struck down by Colombia's Supreme Court in 1986. The issuance of the executive decree in 1989 suspended Colombia's requirement that Colombian nationals be extradited only under public treaties. It was the executive decree in 1989, not the 1979 treaty, that made possible Gallo-Chamorro's extradition in 1990.").

To make matters more confusing, while Colombia does not recognize the 1979 treaty, the United States does. See Arias Leiva v. Warden, 928 F.3d 1281, 1288 (11th Cir. 2019) (holding that American Secretary of State's determination that extradition treaty between United States and Colombia remained in effect was entitled to judicial deference, even if Colombia had not invoked the treaty when processing extradition requests made by the United States, where neither party had given notice of treaty's termination, and United

States had never pronounced it void or otherwise renounced it).

However, this does not change a salient fact: Cifuentes-Cuero has not pointed this Court to any explicit provision in the 1979 treaty or the 1989 executive decree making the treaty or decree the exclusive means by which a defendant's presence could be secured. See Arbane, 446 F.3d at 1225. The Court failed to locate any other decision that has so held, nor does the Court's review of both documents reveal any such explicit provision.[1] In the absence of such provision, the Ker-Frisbie doctrine applies and jurisdiction was proper.[2] See Alvarez-Machain, 504 U.S. at 668-70; see also Castillo, 568 F. App'x at 783.

Cifuentes-Cuero also argues that the manner in which the United States government brought him into this country, by

---

[1] See Extradition Treaty Between the United States of America and the Republic of Colombia, Colom.-U.S., Sept. 14, 1979, S. Treaty Doc. No. 97-8 (1981); 1SR3-330-1-4.

[2] Cifuentes-Cuero also raises the rule of specialty in his Section 2255 Motion, but because his presence was not secured by treaty, treaty-based doctrines like the rule of specialty are inapplicable to him. See United States v. Valencia-Trujillo, 573 F.3d 1171, 1181 (2009) ("Because Colombia's extradition of Valencia-Trujillo to the United States was not based on an extradition treaty between the two countries Valencia-Trujillo lacks standing to assert the rule of specialty.").

13

using "falsification [and] unconscionable action[s]" violated his due process rights and divested the Court of jurisdiction. (Doc. # 1-1 at 14-19).[3] Cifuentes-Cuero has produced not a scrap of evidence to support this theory, but even if he had, "[t]he manner in which [Cifuentes-Cuero] was brought to trial, however, does not affect the ability of the government to try him." United States v. Mitchell, 957 F.2d 465, 470 (7th Cir. 1992) (citing Ker-Frisbie doctrine). And while Cifuentes-Cuero points to the Second Circuit's decision in United States v. Toscanino, 500 F.2d 267 (2d Cir. 1974) – where that court recognized an "outrageous conduct" or "shocks the conscience" exception to the Ker-Frisbie doctrine – the Eleventh Circuit has not recognized such an exception. See United States v. Darby, 744 F.2d 1508, 1531 (11th Cir. 1984) (questioning viability of Toscanino exception and refusing to apply it absent allegations that defendant endured "cruel, inhuman and outrageous treatment").

Here, Cifuentes-Cuero alleges that government agents engaged in "fraud, deceit, and trickery," including

---

[3] To the extent Cifuentes-Cuero argues that his "illegal arrest" violated the Fourth Amendment (see Doc. # 1-1 at 15), his argument is without merit. See Valencia-Trujillo, 573 F.3d at 1183 ("The Fourth Amendment, however, does not apply to actions against foreign citizens on foreign soil.").

14

"falsification." (Doc. # 1-1 at 14, 16). Even if this Court were to apply the Toscanino exception – which it would have serious reservations about doing – this allegation falls short of the sort of cruel and outrageous conduct contemplated by Toscanino.

In sum, the Court is not persuaded that Cifeuntes-Cuero's counsel rendered deficient performance for failing to raise a jurisdictional challenge based on the circumstances of Cifeuntes-Cuero's extradition to the United States. See Philippe v. United States, No. 19-10323-D, 2019 WL 12660977, at *1 (11th Cir. June 4, 2019) (rejecting claim on collateral review that counsel should have sought dismissal of the charges based on United States-Haiti treaties where, under Alvarez-Machain, "the extradition treaty between the United States and Haiti does not preclude other methods of securing a defendant's presence in the United States [and] [a]s such, the district court retained jurisdiction over Philippe, even though his transfer to the United States was conducted outside the formal extradition process") (citation omitted).

What's more, even if counsel's performance was deficient in this regard, Cifuentes-Cuero has failed to demonstrate prejudice because he has not demonstrated that the American authorities could not have obtained his presence in this

15

country through other means. See Strickland, 466 U.S. at 694 (explaining that prejudice prong requires showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

For these reasons, this claim is due to be denied.

### B. Extraterritorial application of 21 U.S.C. §§ 960 and 963

Cifuentes-Cuero also argues that "he was not aboard any vessel[,] he never entered the United States[,] or had any nexus to the United States," and, thus, 21 U.S.C. §§ 960 and 963 do not apply to him, leaving the district court without jurisdiction. (Doc. # 1-1 at 10-14).

As an initial matter, to the extent Cifuentes-Cuero's argument centers on Section 963, he did not plead guilty to violating that statute. Instead, he pled guilty to Count Two of the indictment, which alleged a violation of 46 U.S.C. § 70503(a), 46 U.S.C. § 70506(a) and (b), and 21 U.S.C. § 960(b)(1)(B)(ii). See (Crim. Doc. ## 1, 41 at 1).

Cifuentes-Cuero raised a very similar argument on his direct appeal – that the provisions of the MDLEA should not apply to him because he was not physically in the United States or on the high seas when the crimes were committed.

The Eleventh Circuit rejected this argument. And in doing so, it rejected the same argument that Cifuentes-Cuero raises here, writing:

> But the fact that Mr. Cifuentes-Cuero was not physically on board the vessels is of no consequence. In a conspiracy, "the overt act of one partner in a crime is attributable to all," so long is it can be "reasonably foreseen as a necessary or natural consequence of the unlawful agreement." Pinkerton v. United States, 328 U.S. 640, 647–48 (1946). Even if Mr. Cifuentes-Cuero's own acts were not committed on the "high seas," the factual proffer established that his co-conspirators committed felonious acts in international waters that are attributable to him. The Felonies Clause therefore gives Congress the power to punish Mr. Cifuentes-Cuero for his role in the conspiracy. See United States v. Ballestas, 795 F.3d 138, 147 (D.C. Cir. 2015) (holding that the Felonies Clause "provides Congress with authority to 'punish' Ballestas for his role" in a drug trafficking conspiracy even though he was never on board the relevant vessels because his "co-conspirators committed felonious acts on the high seas" that "are directly attributable to him").

(Civ. Doc. # 4-1 at 8-9).

"Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255." See United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); see also Olmstead v. United States, 55 F.3d 316, 319 (7th Cir. 1995) (section 2255 motion is "neither a recapitulation of nor a substitute" for direct appeal; absent changed circumstances of fact or law, court

17

will not reconsider an issue already decided on direct appeal). Because this argument has already been considered and rejected, it cannot be relitigated in this Section 2255 Motion.

Furthermore, even construing his claim as raising a claim that his counsel was ineffective for failing to raise the argument that the statutes to which he pled guilty did not apply to him – that claim was raised and rejected on direct appeal. Counsel does not render deficient performance for failing to raise a meritless claim. See, e.g., Denson v. United States, 804 F. 3d 1339, 1342 (11th Cir. 2015) ("Failing to make a meritless objection does not constitute deficient performance.").

For these reasons, this claim is meritless.

### III. Certificate of Appealability and Leave to Appeal In Forma Pauperis Denied

The Court declines to issue a certificate of appealability because Cifuentes-Cuero has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2). Nor will the Court authorize Cifuentes-Cuero to proceed on appeal in forma pauperis because such an appeal would not be taken in good faith. See 28 U.S.C. § 1915(a)(3). Cifuentes-Cuero shall be

required to pay the full amount of the appellate filing fee pursuant to Section 1915(b)(1) and (2).

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Jorge Eliecer Cifuentes-Cuero's pro se 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence. (Civ. Doc. # 1; Crim. Doc. # 79) is **DENIED.** The Clerk is directed to enter judgment for the United States of America and to close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 1st day of December, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE